UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

LIBERTY WELLNESS CHIROPRACTIC,

                          Plaintiff,

       -against-
                                                      No. 21 civ. 2132 (CM)
EMPIRE HEALTHCHOICE HMO, INC. d/b/a
EMPIRE BLUE CROSS BLUE SHIELD HMO;
and EMPIRE HEALTHCHOICE
ASSURANCE, INC. d/b/a, EMPIRE
BLUCROSS BLUESHIELD,

                          Defendants.
_____x


**DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND
CONVERTING THE MOTION INTO A MOTION FOR SUMMARY JUDGMENT**

McMahon, J.:

      Plaintiff Liberty Wellness Chiropractic ("Liberty" or "Plaintiff") brings this suit seeking

redress for underpayments, delayed payments and improper denials of payments for covered

services provided to individuals enrolled in health insurance plans underwritten or administered

by defendants Empire Healthchoice HMO, Inc. and Empire Healthchoice Assurance, Inc.

(together "Empire" or "Defendants"). Plaintiff brings a claim under the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., as well as state law claims for

violation of N.Y. Insurance Law § 3224-A, tortious interference with a prospective economic

advantage, breach of contract, and unjust enrichment.

      Empire moved to dismiss Plaintiff's Second Amended Complaint in its entirety pursuant

to Federal Rule of Civil Procedure 12(b)(6).

For the following reasons, Defendants' motion to dismiss is converted to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). Plaintiff has 120 days to conduct discovery into specific factual assertions made by Defendants about the health benefits plans that govern each of the claims for benefits at issue in this case. At that point, I will consider the merits of the motion, but on a claim by claim basis, applying the principles of law outlined below.

## BACKGROUND

### I.      The Parties

Plaintiff is a chiropractic practice that operates clinics in Manhattan. (Second Amended Complaint ("SAC") ¶ 11). A large proportion of Plaintiff's patients are employed in the financial sector, where they receive high-premium health insurance as a benefit of their employment. (*Id.*) Many of these patients are insured under plans underwritten or administered by Empire and that are subject to ERISA's coverage pursuant to 29 U.S.C. § 1003(a). (*Id.*) Plaintiff also treats patients insured under other ERISA and non-ERISA governed employee welfare plans, as well as patients covered under insurance policies not sponsored by an employer. (*Id.*)

Empire is an insurance company that underwrote or administered all the plans at issue in this case. Plaintiff is out-of-network with Empire, meaning that it has not contracted to participate in Empire's managed care network, or to accept reimbursement for its services at any particular rates. (*Id.* ¶ 2). Plaintiff alleges that out-of-network practices are disfavored by insurance companies because, unlike in-network practices, out-of-network practices do not contract to accept below-market rates in exchange for access to a network of patients. (*Id.* ¶ 12). As a result, the amount of benefits owed on out-of-network claims are frequently higher than for comparable in-network services. (*Id.*)

## II.  Factual Background

### A.  Imposition of Prepayment Review and Denial of Benefits

Plaintiff alleges that, in March 2015, Empire issued a letter to one of Plaintiff's physicians, Dr. Michael D'Avanzo, informing him that Empire was "conducting an internal audit" of his claim submissions, and that Empire was placing him on immediate prepayment review. (SAC ¶ 13).

Under prepayment review, Empire requires that a provider submit medical records with each and every claim submitted. (*Id.* ¶ 14). If a provider under prepayment review fails to submit records, Empire declines payment of insurance benefits. (*Id.*) Plaintiff alleges that Empire uses prepayment review as an excuse to deny claims for baseless and/or pretextual reasons, or for no reason at all. (*Id.* ¶ 15).

Plaintiff alleges that, in Dr. D'Avanzo's case, Empire denied coverage for virtually every service Dr. D'Avanzo provided, despite the claims being "clean" (*i.e.*, the obligation to pay benefits is reasonably clear from the claim submission) and regardless of whether Plaintiff had provided supporting medical records. (*Id.*) Plaintiff alleges that, within the first year of Dr. D'Avanzo's prepayment review, the unpaid benefits on these services totaled nearly $700,000. (*Id.*) When Empire provided reasons for the denial of claims, it provided only terse, nonsensical explanations. (*Id.*) Given that a large portion of Dr. D'Avanzo's patients were insured under Empire plans, Empire's actions effectively forced him to cease practicing as a physician, although he remained in Plaintiff's employment. (*Id.* ¶ 16).

In December 2015, Plaintiff alleges that Empire informed Plaintiff that it would conduct a broader audit of the practice and requested the production of medical records for services provided by various employees. (*Id.* ¶ 22). Plaintiff's legal counsel contacted the auditor at Empire to ask whether Empire considered Plaintiff's compliance with the audit to be voluntary

3

or compulsory. Plaintiff alleges that the auditor stated in no uncertain terms that, while the audit was voluntary, if Plaintiff failed to comply, Empire would retaliate by placing the entire practice on prepayment review. (*Id.*)

In February 2016, Plaintiff alleges that it provided the requested records. (*Id.* ¶ 23). In the cover letter submitted with the records, Plaintiff's counsel expressly asked that Empire provide its audit findings with thirty days, as required by New York Insurance Law § 4903(d). However, Plaintiff alleges that it heard nothing further until July 2017, at which time Empire told Plaintiff that it would be placing the entire practice on prepayment review, as well as other practices that happened to co-treat the same patients as Plaintiff. (*Id.* ¶ 24).

A protracted period of negotiations followed, during which Plaintiff asserted legal challenges to the imposition of prepayment review and Plaintiff agreed to provide Empire with additional medical records. (*Id.* ¶ 25). However, in June 2018, Empire placed Plaintiff and all affiliated practices on prepayment review. (*Id.* ¶ 26).

Plaintiff alleges that, while imposing this prepayment review, Empire continued its practice of arbitrarily denying coverage for some claims, while egregiously delaying payment on others. (*Id.* ¶ 26). As Empire does not make direct payments to providers, and instead insists on sending benefit payments directly to patients, Plaintiff alleges that it was put in the position of either charging patients up-front for services that might never be reimbursed by insurance or foregoing payment, or submitting the claim and then hoping the patient would then remit payment to Plaintiff if it were denied. (*Id.*) This financial pressure and uncertainly drove hundreds of previously loyal patients away from Plaintiff, with many patients explicitly stating that the prepayment review was the reason for their seeking treatment elsewhere. (*Id.*) As a

result, Plaintiff was forced to reduce its staff and to close a clinic it operated on the Upper East Side. (*Id.* ¶ 27).

Plaintiff estimates that Empire's underpayments resulting from improper denials of claims totaled more than $1 million dollars. (*Id.* ¶ 32). Plaintiff alleges that payment on millions of dollars in claims was also delayed past the timeframes specified by law. (*Id.*)

In August of 2019, Empire suddenly and without explanation sent Plaintiff a letter announcing that the practice would be removed from prepayment review. (*Id.* ¶ 28).

B.     Assignment of Benefits And Authorization of Direct Payment of Benefits

Plaintiff alleges that, upon patient intake, it obtains an assignment of benefits and authorization of direct payment of benefits to Plaintiff from each patient. (SAC ¶ 17). The standard assignment form expressly states: "THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY." (*Id.*)

Plaintiff also obtains an authorization from each patient appointing it as the patient's "authorized representative" pursuant to the ERISA Claim Regulation, 29 C.F.R. § 2560.503-1(b)(4). (*Id.* ¶ 18). The standard authorization form provides:

> I hereby designate, authorize, and convey to Provider to the full extent permissible under law and under any applicable insurance policy and/or employee health care benefit plan: (1) the right and ability to act as my Authorized Representative in connection with any claim, right, or cause of action that I may have under such insurance policy and/or benefit plan, including but not limited to with respect to appeals or litigation; and (2) the right and ability to act as my Authorized Representative to pursue such claim, right, or cause of action in connection with said insurance policy and/or benefit plan (including but not limited to, the right and ability to act as my Authorized Representative with respect to a benefit plan governed by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as provided in 29 C.F.R. §2560.5031(b)(4)), with respect to any healthcare expense incurred as a result of the services I received from Provider and, to the extent permissible under the law, to claim on my behalf, such benefits, claims, or reimbursement, and any other applicable remedy, including fines or injunctive relief. By signing this form, I understand that Provider is not assuming any obligation or duty to assert such rights and I agree to release any claim I might have relating to Provider's exercise of such rights or the decision not to exercise such rights.

(*Id.*)

Plaintiff alleges that these assignments and authorizations entitled Plaintiff to the notice and appeal rights specified under ERISA and its Claim Regulations. However, Plaintiff alleges that when it attempted to initiate ERISA appeals of the denials of claims, Empire flatly refused to provide ERISA compliant due process. (*Id.* ¶ 19).

Specifically, Plaintiff alleges that, in order to properly challenge Empire's denial of benefits, it demanded compliance with the protections set out in ERISA and the New York Insurance Law. (*Id.* ¶ 25). Plaintiff alleges that it requested the documents and information specified in subsection (g) of the ERISA Claim Regulation, including the specific reason for the denial, reference to and copies of the relevant plan documents, and a description of what further information was needed to perfect the claims. (*Id.* ¶ 20). Plaintiff also demanded a "full and fair review" compliant with subsection (h) of the ERISA Claim Regulation, such as the requirement that appeals of clinical denials be decided in consultation with a health care professional who had appropriate training and experience in the relevant field of medicine.

Plaintiff alleges that Empire simply refused to recognize Plaintiff's assignments or authorizations. (*Id.*). Instead, Empire insisted that each of the hundreds of patients at issue now separately sign a specific authorization form, drafted by Empire after-the-fact, which Plaintiff alleges Empire knew would be practically impossible for Plaintiff to do. (*Id.* ¶ 21).

### III.   The Present Litigation

On March 11, 2021, Plaintiff filed the complaint in this action. (Dkt. No. 1). Plaintiff filed an Amended Complaint on September 23, 2021. (Dkt. No. 15).

Defendants filed a motion to dismiss the Amended Complaint on October 22, 2021. (Dkt. No. 16). On May 13, 2022, my colleague Judge Stanton issued an order dismissing Empire's motion as premature. (Dkt. No. 22). Judge Stanton directed Plaintiff to amend its pleadings to

specify the claims at issue, by adding a claims list, and by identifying the plan provisions applicable to each claim. (*Id.*)

The SAC was filed on July 15, 2022. (Dkt. No. 23). Plaintiff attached to the SAC a claims list, which includes the patient names, member ID numbers, dates of service, amounts billed, amounts paid by Empire and, where available, the claim number. (SAC ¶ 25). There are 1842 claims listed in the claims list. (*Id.*)

The SAC alleges breach of plan provisions for benefits in violation of ERISA § 502(a) (Count I), violation of N.Y. Insurance Law § 3224-A (Count II), tortious interference with a prospective economic advantage (Count III), breach of contract (for claims arising under non-ERISA plans) (Count IV), and unjust enrichment (for claims arising under non-ERISA plans) (Count V).

Plaintiff demands payment and/or restitution of benefits and other monetary relief, interest on all improperly denied or delayed payments since the time they became due, an Order estopping Defendants from underpaying and denying benefits for valid claims and requiring Defendants to pay all such future claims correctly, as well as attorneys' fees and costs. (*Id.*, Claim For Relief).

Defendants filed a motion to dismiss the SAC on September 30, 2022. (Dkt. No. 28).

On December 19, 2022, this case was reassigned to this Court.[1]

## CONVERSION TO A MOTION FOR SUMMARY JUDGMENT

In determining a motion to dismiss, apart from the complaint itself, the court may consider any documents attached to it as exhibits or incorporated into the complaint by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Even if a document is not

---

[1]      I apologize to the parties if they are being put to additional work, but I would have handled this case somewhat differently had it been assigned to me at the outset.

incorporated by reference, the court may still consider it while adjudicating a motion to dismiss, as long as the complaint "relies heavily upon [the document's] terms and effect." *Id.* at 153; *Vollinger v. Merrill Lynch & Co.*, 198 F.Supp.2d 433, 438 (S.D.N.Y. 2002). However, a court must exclude all other extrinsic documents from its review, or, alternatively, convert the motion to one for summary judgment, allowing the parties to conduct discovery in accordance with Rule 56. *See* Fed. R. Civ. Pro. 12(d); *Chambers*, 282 F.3d at 154. Generally, a court should give the parties explicit notice of its intention to convert such a motion. *Green v. Doukas*, 205 F.3d 1322 (2d Cir. 2000) (citing *In re G. & A. Books, Inc.*, 770 F.2d 288, 294-95 (2d Cir.1985)). "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Together with their motion to dismiss, Defendants submitted copies of the health benefits plans that govern each of the claims for benefits listed in the claims list attached to the SAC. (Oluwasanmi Decl., Dkt. No. 19). Defendants also submitted a chart, compiled by Defendants' outside counsel, that summarizes relevant information from these health benefits plans ("the Claims Chart"). (Sirota Decl., Dkt. No. 30-2). Specifically, the Claims Chart states, for each of the claims for benefits listed in Plaintiff's claims list, whether the applicable health benefit plan (i) is an ERISA plan, Federal Employees Program ("FEP") plan, or other type of plan; (ii) contains an anti-assignment clause; and/or (iii) contains a contractual statute of limitations for filing a lawsuit. (*Id.*)

Defendants rely on the plans and this Claims Chart in making a number of their arguments in support of their motion to dismiss. They argue that (i) Plaintiff does not have standing to assert its ERISA cause of action for any claims arising under plans that contain anti-assignment provisions (asserting that 93.6% of the health benefits claims at issue are governed

by health benefits plans that contain unambiguous anti-assignment clauses); (ii) Plaintiff's claims arising under plans that contain time limitations provisions for filing a lawsuit are time barred (asserting that 75% of the claims at issue in this case are time barred); (iii) Plaintiff's state law claims, in so far as they relate to claims for benefits governed by ERISA or FEP plans, are preempted by federal law.

Courts have repeatedly held that, for ERISA cases, plan documents are integral to the complaint and may properly be considered on a motion to dismiss. *See, e.g.*, *Pro. Orthopaedic Assocs., PA v. 1199 Nat'l Benefit Fund, No. 16-CV-4838 (KBF)*, 2016 WL 6900686, at *1 (S.D.N.Y. Nov. 22, 2016), *aff'd*, 697 F. App'x 39 (2d Cir. 2017).

However, Defendants' Claims Chart cannot be characterized as "integral" to the SAC. Plaintiff did not rely on Defendants' summary of the contents of the various health benefits plans in drafting the SAC. Therefore, the court must either (1) exclude the Claims Chart in deciding the motion to dismiss; or (2) treat Defendants' motion as a motion for summary judgment under Rule 56 and allow Plaintiff an opportunity to review the Claims Chart for accuracy and to present any additional pertinent information.

As the Claims Chart presents substantial factual information about the 1842 claims listed in Plaintiff's claims list that is highly relevant to whether this case can go forward – and if so, as to which of the 1842 claims in the Claims Chart – the court exercises its discretion to convert Defendants' motion to dismiss into a motion for summary judgment so that it may properly consider this information.

Plaintiff has 120 days from the issuance of this decision to engage in discovery about the applicable health benefits plans and Defendants' assertions concerning the contents of those plans as summarized in its Claims Chart. At the end of that period, Plaintiffs will have an

opportunity to oppose the motion for summary judgment by identifying, on a claim by claim

basis, whether it contests Defendants' assertion that any particular claim should be dismissed

from this action. (Obviously, I cannot grant a motion to dismiss "75% of the claims" or "93.6%

of the claims" – I have to deal with this on a claim by claim basis, since this is, in effect, 1842

separate lawsuits that have been consolidated by the Plaintiff into a single action).

      When I eventually make a determination about which, if any, of the individual claims

should be dismissed, I will be applying rules that I can set out now, for the parties' convenience.

These rulings of law are not fact-based and apply to each individual claim.

## I.      Standing to Sue

      Defendants assert that Plaintiff lacks standing to sue under ERISA on 93.6% of the 1842

claims in suit, because the applicable health care plans unambiguously bar the assignment of

patient claims to a provider such as Liberty. (Dkt. No. 31 at 6, 9). Whether the 96.3% number is

right or not I cannot presently say; but I can say that Defendants are correct that an unambiguous

anti-assignment provision in a plan will bar Liberty from maintaining suit on any claims covered

by said plan.

      "Section 502(a)(1)(B) limits the class of individuals who can sue to recover benefits due,

enforce rights, or clarify rights to future benefits to those individuals who are 'participants' or

'beneficiaries' of a benefits plan." *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 176 (2d Cir. 2001)

(per curiam). "Healthcare providers are not beneficiaries or participants under ERISA." *Mbody*

*Minimally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.*, No. 13 Civ. 6551 (DLC),

2016 WL 2939164, at *3 (S.D.N.Y. May 19, 2016) (citing *Rojas v. Cigna Health & Life Ins. Co.*,

793 F.3d 253, 257–58 (2d Cir. 2015)). However, in the Second Circuit, healthcare providers are

allowed "to bring claims under § 502(a) based on a valid assignment from a patient." *Am.*

*Psychiatric Ass'n*, 821 F.3d at 361 (citing *I.V. Servs. of Am., Inc. v. Trs. of Am. Consulting Eng'rs Council Ins. Tr. Fund*, 136 F.3d 114, 117 n.2 (2d Cir. 1998)).

 Plaintiff alleges in the SAC that "as a matter of business practice, upon patient intake, Liberty obtains an assignment of benefits and authorization of direct payment of benefits to Liberty from each patient," (SAC ¶ 17). But that is of little help to Plaintiff if the plan contains an anti-assignment clause. "Under federal common law, which governs construction of the ERISA plans, unambiguous anti-assignment clauses serve to void patients' assignments of benefits and other legal obligations under ERISA." *Mbody*, 2016 WL 4382709, at *6. "Thus, a healthcare provider who has attempted to obtain an assignment in contravention of a plan's terms is not entitled to recover under ERISA." *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351–52 (S.D.N.Y. 2013).

Plaintiff argues that it has an alternate basis for standing because it has been appointed as the authorized representative of its patients pursuant to the ERISA Claim Regulation, 29 C.F.R. § 2560.503-1(b)(4). (SAC ¶ 18, 35). However, courts in this Circuit have held that "a medical provider's status as an Authorized Representative does not negate an unambiguous anti-assignment provision, or otherwise independently provide a cause of action pursuant to ERISA § 502(a)(1)(B)." *Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*, No. 19-CV-9761 (JGK), 2021 WL 665045, at *7 (S.D.N.Y. Feb. 19, 2021) (collecting cases).

Therefore, to the extent that a claim arises under an ERISA Plan that contains an unambiguous anti-assignment provision, Plaintiff will not be allowed to maintain suit and recover on that claim. It is Defendant's burden, on its motion for summary judgment, to establish that a particular claim is governed by a plan containing an anti-assignment clause; it is Plaintiff's

burden, in opposing the Defendant's motion for summary judgment, to raise a genuine issue of fact if there is any ambiguity in such a clause.

## II.    ERISA Preemption of State Law Claims

Defendants state that all but 17 of the 1842 claims in suit are governed by an ERISA plan, and argue that any state law causes of action addressed to those claims must be dismissed as preempted. Again, Defendants are correct.

ERISA's preemption provision "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144. "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)). "As to state common law claims, ERISA preempts those that seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.'" *Id.* (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004)). "A claim under state law is not independent of ERISA if the terms of a benefit plan are 'an essential part' of the claim, and liability would exist only because of the administration of an ERISA-regulated benefit plan." *Michael E. Jones M.D., P.C. v. UnitedHealth Grp., Inc.*, No. 19-CV-7972 (VEC), 2020 WL 4895675, at *5 (S.D.N.Y. Aug. 19, 2020).

Plaintiff's breach of contract (Count IV) and unjust enrichment (Count V) claims are expressly limited to "claims arising under non-ERISA plans." It is incumbent on Plaintiff, in opposing the Defendants' motion for summary judgment, to identify which claims arise under non-ERISA plans. Any state law claims addressed to claims arising under ERISA plans will of course have to be dismissed.

Plaintiff's claim for tortious interference with a prospective economic advantage (Count III), as applied to the ERISA plans, is also preempted. Plaintiff argues that this claim is not preempted because it is based on the impact of Defendants' imposition of "prepayment review" as a retaliatory measure intended to cause damage to Plaintiff's business relationships with its patients, and so the claim does not concern or relate to the terms or coverage provisions of any ERISA plan. (Dkt. No. 34 at 13). However, Defendants' alleged use of prepayment review to interfere with business relationships inherently has a connection with the ERISA plans at issue, since it concerns patients' receipt of benefits under their plans and requires reference to the plans to determine benefits due. Therefore, the tortious interference claim is a "postcard example of the type of state law claim expressly preempted by ERISA." *See Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 572 (S.D.N.Y. 2016); *Paneccasio*, 2003 WL 1714085 at *8; *Pelosi v. Schwab Cap. Markets*, L.P., 462 F. Supp. 2d 503, 517 (S.D.N.Y. 2006).

Likewise, Plaintiff's argument against preemption of claims asserted under the New York Prompt Payment Law (Count II) is misguided. "The Prompt Pay Act requires health insurance claims to be paid within thirty or forty-five days of receipt, depending on whether the method of transmission is digital or physical, provided that the obligation to pay is 'reasonably clear' and there is no 'reasonable basis' to believe that the claim is fraudulent." *Michael E. Jones M.D., P.C.*, 2020 WL 4895675, at *6 (quoting N.Y. Ins. Law § 3224-a(a)).

Plaintiff argues that ERISA's savings clause, which exempts from preemption "any law of any State which regulates insurance" bars preemption of this claim. 29 U.S.C. 1144(b)(2)(A); *see also Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 107 (2d Cir. 2017). "A law 'regulates insurance' under this savings clause if it (1) is 'specifically directed toward entities engaged in insurance,' and (2) 'substantially affects the risk pooling arrangement between the insurer and

the insured.'" *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 240 (2d Cir. 2014) (quoting *Kentucky Ass'n of Health plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003)). Plaintiff states that compliance with the Prompt Pay Act "shifts the financial risk of a non-coverage dispute from the claimant to the insurer" and so this "substantially affects the risk pooling arrangement between the insurer and the insured." (Dkt. No. 34 at 13).

However, ERISA's "savings clause" does not "save" Prompt Pay Act claims from federal preemption when an ERISA plan is the plan at issue. *See, Michael E. Jones M.D., P.C*, , 2020 WL 4895675, at *6; *Bassel v. Aetna Health Ins. Co. of New York*, No. 17CV05179ERKRER, 2018 WL 4288635, at *5 (E.D.N.Y. Sept. 7, 2018); *Neurological Surgery, P.C. v. Northrop Grumman Sys. Corp.*, No. 215CV4191DRHAKT, 2017 WL 389098, at *10 (E.D.N.Y. Jan. 26, 2017); *Weisenthal v. United Health Care Ins. Co. of New York*, No. 07 CIV. 0945 (LAP), 2007 WL 4292039, at *7 (S.D.N.Y. Nov. 29, 2007). That is because any determination of whether the Prompt Pay Act was complied with necessarily involves deciding whether the claim is covered by the plan – a classic instance of ERISA preemption.

## III.   Federal Employees Program Plan Preemption of State Law Claims

Finally, Defendants allege that Plaintiff's claims for benefits from patients covered under Federal Employees Program ("FEP") plans are preempted by the Federal Employees Health Benefit Act of 1959 ("FEHBA").[2] (Dkt. No. 31 at 20). I do not know how many of the 1842 claims in suit relate to services provided to federal employees, but any state law claims relating to those patients are likewise preempted.

"FEHBA contains a preemption clause, § 8902(m)(1), displacing state law on issues relating to 'coverage or benefits' afforded by health-care plans." *Empire Healthchoice*

---

[2]      Defendants also argue that these claims for benefits are barred by the doctrine of sovereign immunity. It is not necessary to reach that issue.

*Assurance, Inc. v. McVeigh*, 547 U.S. 677, 683, 126 S. Ct. 2121, 165 L.Ed. 2d 131 (2006). The preemption clause states:

> "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."

5 U.S.C. § 8902(m)(1).

FEHBA assigns to the Office of Personnel Management ("OPM") responsibility for negotiating and regulating health-benefits plans for federal employees. *See McVeigh*, 547 U.S. at 683, 126 S. Ct. 2121. "OPM's regulation, 5 CFR § 890.107(c), instructs enrollees seeking to challenge benefit denials to proceed in federal court against OPM and not against the carrier or carrier's subcontractors." *Id.* at 680.

Defendants assert that Plaintiff's state law claims are all predicated on Empire's alleged improper pricing, denial, and/or underpayment of the patients' claims – each of which directly implicates the contractual provisions in the operative health benefits plans that relate to coverage or benefits. Therefore, they assert that these claims "relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits)." 5 U.S.C. § 8902(m)(1).

While Plaintiff concedes that its state law claims for breach of contract (Count IV) would be preempted for any claims arising under FEP plans, it argues that its claims under the NY Prompt Payment Law (Count II), for tortious interference (Count III), and for unjust enrichment (Count V) are brought in Plaintiff's own right and so are for damages rather than benefits. (*See* Dkt. No. 34 at 14).

However, courts in this Circuit have routinely found that FEBHA's preemption provision applies to medical providers' state law claims that are based on a failure to pay for services rendered to FEHBA enrollees. For example, in *Mbody Minimally Invasive Surgery, P.C. v.*

*Empire Healthchoice HMO, Inc.*, No. 13-CV-6551 TPG, 2014 WL 4058321, at *1 (S.D.N.Y. Aug. 15, 2014), plaintiff medical professionals brought state law claims, including for breach of contract, unjust enrichment, and violation of the prompt payment statute based on underpayment or denial of payment of patients' claims. The court held that the FEHB preempted all of plaintiffs' state-law claims related to FEHB plans. *Mbody*, 2014 WL 4058321, at *5. Similarly, in *Angstadt v. Empire HealthChoice HMO, Inc.*, No. 15CV1823SJFAYS, 2017 WL 10844692 (E.D.N.Y. Mar. 16, 2017), plaintiff doctors brought claims against Empire for alleged improper denial of benefits. The court determined that plaintiffs' state law claims for breach of express and implied contract, unjust enrichment, tortious interference with contract, and violation of the prompt payment statute that were premised on this denial of benefits were preempted by the FEHBA. *Angstadt*, 2017 WL 10844692, at *9; *see also Lieberman v. Nat'l Postal Mail Handlers Union, a Div. of Laborers' Int'l Union of N. Am.*, AFL-CIO, 819 F. Supp. 344, 348 (S.D.N.Y. 1993).

Accordingly, Plaintiff's state law claims are also preempted to the extent that they relate to services provided pursuant to FEP plans.

## IV.    Exhaustion of Administrative Remedies

Exhaustion of administrative remedies is an affirmative defense. "A complaint may be dismissed on the grounds of an affirmative defense only 'if the defense appears on the face of the complaint.'" *Med. Soc'y of New York v. UnitedHealth Grp. Inc.*, No. 16-CV-5265 (JPO), 2017 WL 4023350, at *5 (S.D.N.Y. Sept. 11, 2017) (quoting *Morillo v. 1199 SEIU Benefit & Pension Funds*, 783 F. Supp. 2d 487, 489 (S.D.N.Y. 2011)). Therefore, had I not converted this to a motion for summary judgment, I would have denied the motion to dismiss on this ground.

However, as I have converted, the Plaintiff shall take discovery on exhaustion, limited to whatever claims might not be dismissible under the principles already outlined. There would

appear to be very few such claims, and there is no need to take discovery on exhaustion issues if, applying the rulings already made, a federal claim will be dismissed for lack of standing and a state law claim will be dismissed for preemption.

**V.      Twombly-Iqbal Failure to State a Claim**

This argument becomes moot now that the court has converted the motion to one for summary judgment.

**CONCLUSION**

At the conclusion of the 120 period I am allowing for discovery, the Defendants must file a supplement to their converted motion for summary judgment, identifying, on a claim by claim basis, the reason(s) why they are entitled to summary judgment dismissing that particular claim. That means, for each of the 1842 patient claims that Empire has not paid, the Defendants must explain why they are entitled to summary judgment on Count I, Count II, Count III, Count IV, etc. I would be perfectly content if the Defendants assigned identifying numbers to the various reasons why a cause of action might be dismissed (Standing =1, ERISA Preemption =2, FEP Preemption =3, Failure to Exhaust =4) and then made a chart – placing down the x axis each of the 1842 patient claims in suit, and across the y axis each cause of action in the Complaint – and in the box where the patient claim meets the cause of action, simply insert the number or numbers of the reason(s) why that particular cause of action must be dismissed as to that particular patient claim. Plaintiff must then raise a genuine issue of material fact as to why any particular cause of action relating to any specific patient claim is viable in order to avoid summary judgment dismissing that specific cause of action as related to that particular patient claim. I realize this is tedious but there is simply no other way to do it.

And then we will see if there be anything left of this lawsuit.

Dated: February 10, 2023

_____
U.S.D.J.

BY ECF TO ALL COUNSEL